[Civ. No. 711.   Third Appellate District.—December 15, 1910.]

## D. D. ARMSTRONG, Appellant, v. EUGENE GARATE and FRANK M. AMIAS, Respondents.

EJECTMENT AGAINST TENANTS UNDER VERBAL LEASE—DEFENSE OF RENEWAL—SUPPORT OF FINDING—CONFLICTING EVIDENCE.—In an action of ejectment against tenants who had been holding from year to year under a verbal lease, where the defense was of renewal for another year, and the trial court sustained the defense, and found upon the evidence for the defense that the lease had been renewed for another year, it is held that it is sufficiently supported notwithstanding the conflicting evidence of plaintiff to the contrary. It was for the trial court to determine the weight of the evidence.

ID.—TIME OF LEASING FOR CURRENT YEAR—CONSTRUCTION OF ANSWER—FINDING WITHIN ISSUES.—Where the answer pleads verbal leases from year to year, commencing January 1st in each year from the year 1905 to and including the current year 1909, it does not affirm or negative the time of making the verbal lease in any year, and a finding that the answer is true, and that the verbal lease for the current year was made February 3, 1909, is within the issues. A verbal lease may be made for any current year after its commencement; and the position is not tenable, that the lease pleaded in the answer in ejectment is not proved, and that the verbal lease proved is not pleaded.

ID.—ABSENCE OF SPECIAL DEMURRER—INDEFINITE AVERMENT—DEFINITE PROOF.—If the plaintiff in ejectment had desired a more specific and definite averment in the answer as to the time of making the verbal lease for the current year, he might have secured it by specially demurring to the answer; but in the absence of such demurrer, the defendants were entitled to render such time specific and definite by proof.

APPEAL from a judgment of the Superior Court of Lassen County.   H. D. Burroughs, Judge.

The facts are stated in the opinion of the court.

Rankin & Julian, for Appellant.

Frank A. Kelley, for Respondents.

HART, J.—This is an action in ejectment.   The defendants were awarded judgment, from which, on a bill of exceptions, this appeal is prosecuted.

It is not disputed that the defendants held possession of and occupied the land in controversy under a verbal lease from plaintiff, from year to year, from the first day of January, 1905, to the first day of January, 1909; but plaintiff claims that the lease terminated and was not renewed on the expiration of the year ending January 1, 1909, and charges in his complaint that defendants nevertheless continued in possession of the premises after the last-mentioned date against his wish and consent and without right, and have refused to turn over or deliver to him the possession of said premises.

The principal question submitted on this appeal is whether or not the finding that the plaintiff, following the customary manner in which he had theretofore leased the premises to defendants, on the third day of February, 1909, by verbal agreement, leased to the latter said premises for the year ending January 1, 1910.   The plaintiff testified, in part, as follows: "I had a talk with Mr. Garate in November, 1908, at my house, myself and Mr. Garate being the only ones present.   At this time he wanted to lease the property for a term of years, and I wouldn't do that.   I made no terms for 1909."   On the 7th of February, 1909, plaintiff addressed a letter to the defendants, among other things saying: "On account of fencing the Jones place I don't think I can rent it to you for this year, as I will have to have the fences open so long before I can get it fenced it will probably damage the crop. . . . When I get it fenced I will have to have more rent for it as I am getting more money invested in it."   Subsequently the plaintiff sent a written lease, dated May

29, 1909, to defendants and requested them to sign it. This they refused to do, and, thereupon, plaintiff leased the land to one Fleming, at a rental of $500 per year ($300 in excess of the sum paid by defendants for the land under the former verbal leases), but plaintiff failed to deliver possession of the land to said Fleming because defendants held and refused to give up possession thereof.

The defendant, Amias, testified that he had "an understanding with Mr. Armstrong regarding the leasing of the property on February 3, 1909, for the year 1909. We had the conversation in the banking-house of the Bank of Lassen County, after I paid Mr. Armstrong what was due him. I gave him a check for $190.30 or 35 cents, or $190 and some cents. After I gave him the check and now I says, 'Dan, are we square?' and he says, 'Yes.' I says, 'Everything satisfactory?' and he said 'Yes.' And I says, 'Then we are going on for another year?' and he says, 'Yes.' I says, 'All right; we go on for another year,' and of course there wasn't no more said, although we had a conversation before that over some money matters. It was an important matter for me to know, because we had two hundred and fifty or three hundred head of stock on hand and had no place in view where we could feed them and take care of them."

The witness Eneboe, for the defendants, testified that he met plaintiff on May 16, 1909, when he "asked him how much he would take for his place, or if he wanted to sell, and he says, 'It is no use to talk about it now,' he says, 'I could not turn them over to you anyhow, because I let the boys [referring to defendants] have them another year.' "

Thus it will be seen that there is evidence supporting the finding that the land in controversy was, by verbal agreement, leased by plaintiff to defendants for the year 1909. The testimony of plaintiff contradictory to Amias' testimony only creates a direct conflict in the evidence upon the important question in the case, and, of course, we cannot say that the trial court should have disbelieved Amias and so made a finding against the defendants as to the lease for 1909.

Counsel point out some alleged inconsistencies and admissions in the testimony of Amias, and insist that these should be sufficient to condemn a finding founded on his testimony. But it was for the trial court to pass upon the weight of the

testimony, and if said court, as appears to have been the case, could find nothing in the alleged inconsistencies which in its judgment so disparaged Amias' testimony as to render it unreliable or disbelievable, then much less should this court be expected to do so.

The admission which it is asserted Amias made was in saying that "we did not make a verbal lease," but that the lease for the year 1909 was under the "old contract." By this counsel for appellant were made to understand that defendants were holding possession in the year 1909 under the verbal agreement made as to the previous years. But it is evident that Amias did not use the terms "verbal lease" and the "old contract" in their legal sense, but merely thus intended to say that the lease for 1909 was made in the usual or customary manner in which the parties had made their agreements of lease theretofore. In fact, he explained that, after the making of the lease for the year 1905, the parties would, upon the expiration of the term each year, have a verbal understanding that the defendants could have a lease of the land for the ensuing year. He testified that they (defendants) would ask plaintiff if they were "going to run the place for another year?" and that plaintiff would give them an affirmative answer. "We didn't go to work and explain everything, what was on the lease, or anything of the sort," testified Amias. "It was 'Yes' or 'No.' "

There is nothing in the letter addressed to plaintiff by Amias and dated February 23, 1909, necessarily inconsistent with the latter's statement that a verbal lease was made to defendants of the land on February 3, 1909. This letter appears to be a reply to one from plaintiff in which the latter demanded more rent. Amias said in his letter, among other things, "If you wanted to raise the rent, why didn't you say something about it when you told us we could have the place another year?" We see nothing in this statement from which it need necessarily be inferred that Amias had reference to any other time than February 3, 1909, on which occasion he testified that the lease for 1909 was made, notwithstanding the fact that in said letter he also inquired in the same connection, "Why didn't you say something when I paid you the rent for 1908?"

But counsel for appellant contend that while the only issue tendered and tried was whether, as alleged in the answer, plaintiff leased the land in dispute, by a verbal agreement, to the defendants, from year to year, "from the first day of January, 1905, and for each and every year thereafter to the present time," the court not only found that the issue as thus stated was sustained by the proofs, but further found that the lease under which defendants now hold possession of the premises was made on February 3, 1909. In other words, it is claimed that the court finds that two distinct leases were made to defendants of the land for the year 1909 —the one pleaded in the answer and the other, although not specifically pleaded, proven to have been made on the third day of February, 1909. The argument is that the pleaded lease is not proved, and that the proved lease is not pleaded, and that, therefore, there is no support for the finding as to either.

But we think counsel are mistaken in their construction of the answer. As we understand the averments of that pleading, the defendants do not undertake to specify therein any particular time at which the verbal agreement of the lease of the land for the year 1909 was made or entered into. The allegation as to the lease merely amounts to a statement that from the year 1905, and in every year thereafter, the defendants, by verbal agreement with plaintiff, leased said land, said lease to *commence on the first day of January of each year* for which the premises were so leased. There is no attempt at stating the precise time at which the *agreement was made.* In other words, the answer does not allege, as counsel's argument assumes, that the lease was made on the first day of January of each year.

Nor do the court's findings show that there were two distinct agreements of lease for the year 1909. The court finds the fact as to the number of years during which defendants had by verbal agreement leased the land from year to year as it is alleged in the answer and was proved at the trial, and then finds that on the third day of February, 1909, in pursuance of the customary manner in which the parties had in previous years carried on their relations as to the land in controversy, the plaintiff and defendants entered into a verbal

agreement by the terms of which the latter were to remain in possession as lessees of said land during the year 1909.

We think the allegations of the answer were sufficient to justify the admission of the proof of the making of the verbal agreement of lease for the year 1909 at any time within said year. If appellant had desired something more specific in the answer as to the precise time at which said lease was made, he could perhaps have compelled defendants to have given him more definite information on that question in their pleading by demurring thereto on the ground of uncertainty or some other special ground which might have been good as against the answer. But no demurrer, either general or special, was interposed to the answer, and, as stated, we think it was sufficient for the allowance of proof of any verbal lease made within the year during which such lease was operative.

The judgment is affirmed.

Burnett, J., and Chipman, P. J., concurred.